FILED
2026 Aug-31 PM 03:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **CYNTHIA RICHARDS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **5:25-cv-600-EGL** |
| | ) | |
| **SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

Plaintiff Cynthia Richards seeks judicial review of the Commissioner of Social Security's denial of her application for disability insurance benefits and supplemental security income. She argues the ALJ's credibility analysis is flawed, and the RFC fails to account for necessary limitations. After careful review of the administrative record and the parties' briefs, the Court **REJECTS** the Magistrate Judge's Report and Recommendation (Doc. 24) and **AFFIRMS** the Commissioner's decision.

## BACKGROUND

### A. Procedural Background

In June 2021, Richards filed an application for a period of disability and disability insurance benefits as well as an application for supplemental security income. Doc. 13-4 at 17. After these claims were denied initially and upon reconsideration, Richards requested a hearing. *Id.* The ALJ held a hearing and denied Richards's application for disability insurance benefits and her application for supplemental security income, finding that she was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. *Id.* at 17, 27. The Appeals Council denied Richards's request for review. Doc. 13-2 at 10-13. Richards has exhausted her administrative remedies and timely filed this action; the Court therefore has jurisdiction under 42 U.S.C. § 405(g).

### B. Factual Background

Richards alleges her disability began on June 1, 2021,[1] when she stopped working due to "COVID[] that knocked [her] down." Doc. 13-5 at 42. She has at least a high school education and has past relevant work as a licensed practical nurse. *Id.*; Doc. 13-4 at 25-26.

[1] At the hearing, Richards modified the alleged onset date to June 1, 2021. Doc. 13-5 at 40. Her application and parts of the ALJ decision list the date as June 2020, but Richards amended the date on the record at the hearing. *Id.*

## ALJ DECISION

To determine whether a claimant is disabled, an ALJ applies a five-step sequential evaluation process. The ALJ must assess whether the claimant (1) is currently engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals the severity of a listed impairment; (4) can perform any past relevant work; and, if not, (5) can adjust to other work that exists in significant numbers in the national economy. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

At step one, the ALJ found that Richards had not engaged in substantial gainful activity since May 1, 2021. Doc. 13-4 at 19-20. At step two, the ALJ determined that Richards had the following severe impairments: lumbar spondylosis and diabetes mellitus. *Id.* at 20-22. Considering mental impairments, the ALJ noted that "[a]t the hearing, [Richards] denied any mental impairments, but testified that since she had COVID she has difficulty with concentration and is easily distracted." *Id.* at 20. He found that Richards's "medically determinable mental impairments of depression and neurocognitive disorder … do not cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore nonsevere." *Id.* The ALJ concluded at step three that none of Richards's impairments, alone or in combination, met or medically equaled a listed impairment. *Id.* at 22.

Before step four, the ALJ must determine a claimant's residual functional capacity (RFC), which is an assessment of the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from her relevant impairments. *See* 20 C.F.R. § 404.1545(a). Here, the ALJ considered the entire record and found that Richards had the RFC to perform light work except frequent postural activities, and she should not climb ladders. Doc. 13-4 at 22-25. Richards can bend and lift from the ground level on an occasional basis but should avoid concentrated exposure to extreme temperatures and vibrations, fumes, dusts, gases, inhalers, and irritants. *Id.* at 22. At step four, the ALJ found that Richards was unable to perform any past relevant work, and he therefore moved to step five, concluding that Richards had acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. *Id.* at 25-27.

Based on these findings, the ALJ concluded that Richards had not been disabled from June 1, 2021 through January 26, 2024, and he therefore denied her application for disability insurance benefits and supplemental security income. *Id.* at 27.

## STANDARD OF REVIEW

Judicial review under the Social Security Act is narrow. The Court asks only whether the Commissioner's decision is supported by substantial evidence and rests on the correct legal standards. *Winschel*, 631 F.3d at 1178.

"[W]hatever the meaning of 'substantial' in other contexts," in the context of judicial review of social security decisions, the threshold "is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). Substantial evidence exists where there is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015). If that standard is met, the Court must affirm, "[e]ven if the evidence preponderates *against* the Commissioner's findings." *Id.* (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).

## DISCUSSION

Richards argues that the Court must remand due to the ALJ's flawed credibility analysis and his failure to incorporate certain limitations in the RFC. *See generally* Doc. 18. The magistrate judge agreed with one of Richards's arguments and recommended that the Court remand the case because the ALJ did not acknowledge Richards's non-severe mental impairment in formulating the RFC. Doc. 24 at 9. The Court rejects that recommendation as well as both of Richards's arguments.

First, Richards's main argument is not based on the ALJ's alleged error to include her mental impairment in the RFC—she argues instead that the ALJ "fundamentally" missed the point when he evaluated her COVID related fatigue and concentration issues as a mental impairment. Doc. 18 at 22. She argues that her concentration problems are "not psychiatric in origin but are instead a *physical* manifestation of post-COVID syndrome." *Id.* at 24 (emphasis added). Considering COVID concentration and fatigue problems as a physical impairment, Richards argues that the ALJ's credibility analysis is flawed, and the RFC fails to account for credible limitations. *Id.* at 9. Considering Richards's post-COVID symptoms as physical limitations, the Court finds that substantial evidence supports both the ALJ's credibility analysis and his subsequent RFC determination.

Second, Richards argues alternatively that even if her COVID-related difficulties were properly considered as a mental impairment, the ALJ did not properly assess that mental impairment in his RFC formulation. *Id.* at 24-25. The magistrate judge agreed, concluding that the ALJ did not properly consider Richards's fatigue and concentration issues related to her mental impairment in the RFC. *See* Doc. 24. The Court disagrees for two reasons. First, the ALJ was not required to include this mental impairment in the RFC after he found it caused no functional limitations. And, second, review of the RFC analysis and the decision as a whole reveal that the ALJ did consider Richards's non-severe mental impairment

when formulating the RFC. That analysis is supported by substantial evidence and the Court thus affirms.

## I. Concentration & Fatigue as Physical Impairments

### A. Subjective Symptom Finding

Richards argues that the ALJ's credibility analysis of her subjective symptoms was flawed and that he "committed reversible error by failing to properly evaluate and account for [her] credible testimony regarding her debilitating fatigue and concentration difficulties following COVID-19." Doc. 18 at 11, 25-26.

When a claimant seeks to establish disability through her own testimony about pain or other subjective symptoms, the Eleventh Circuit's multi-step "pain standard" applies to review of her claim. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). The claimant must show (1) evidence of an underlying medical condition and (2) either (a) objective medical evidence confirming the severity of the alleged pain resulting from the condition, or (b) that the objectively determined medical condition could reasonably be expected to produce the alleged symptoms. *Id.*; *see also Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1277 (11th Cir. 2024); 20 C.F.R. § 404.1529.

Once that threshold is met, the ALJ must evaluate the claimant's statements about the intensity, persistence, and limiting effects of his symptoms and assess those statements against the objective medical evidence and the record as a whole. 20 C.F.R. § 404.1529(c)(4); *see also Raper*, 89 F.4th at 1277. In doing so, the ALJ

considers the claimant's daily activities; the frequency and intensity of the claimant's pain; precipitating and aggravating factors; the type, dosage, and effects of medications; any treatments other than medication; any measures used to relieve pain; and any other relevant factors. 20 C.F.R. § 404.1529(c)(3).

If the ALJ finds a claimant's subjective testimony not fully credible, the ALJ must articulate explicit and adequate reasons for that determination. *Wilson*, 284 F.3d at 1225. A clearly articulated credibility finding supported by substantial evidence will not be disturbed on review. *See Raper*, 89 F.4th at 1277; *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

Here, the ALJ applied that standard and found that although Richards had medically determinable impairments that could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of her symptoms were inconsistent with the medical evidence and other evidence in the record. Doc. 13-4 at 23-24. Substantial evidence supports that credibility finding.

Richards argues that the ALJ failed to properly consider the "location, duration, frequency, and intensity of [her] symptoms" as required by C.F.R. § 404.1529(c)(3). Doc. 18 at 26. In support, she cites instances of self-reported fatigue, including her testimony that she experiences fatigue "all the time." *Id.*

Richards's citations do not show that the ALJ failed to properly consider the location, duration, frequency, and intensity of her symptoms. Her testimony of constant fatigue does not conclusively establish the intensity and persistence of her symptoms; the ALJ is required to evaluate those statements "in relation to the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). And contrary to her argument, the ALJ's decision shows that he considered her testimony at the hearing—particularly the testimony she was fatigued all the time—in light of the other evidence. Doc. 13-4 at 23; *infra* at 9-13. He considered the entirety of the record and determined that her statements as to the intensity of her symptoms were inconsistent with that record as a whole. Doc. 13-4 at 23-24. There was no requirement that the ALJ refer specifically to every piece of evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005), or refer to each § 404.1529(c)(3) factor specifically, *Hernandez v. King*, No. 23-cv-24125, 2025 WL 935101, at *11 (S.D. Fla. Feb. 14, 2025), *report and recommendation adopted*, 2025 WL 928733 (S.D. Fla. Mar. 27, 2025).

The ALJ acknowledged Richards's testimony that after having COVID, she often caught ill and was unable to work, was unable to do yardwork, was fatigued "all the time," and has had to push herself to do things every day. Doc. 13-4 at 23. After acknowledging her statements as to her pain and limitations, the ALJ

considered the objective medical evidence, medical opinions, and other evidence in the record. *Id.* at 23-24.

From January 2021 to April 2021, Richards visited Alabama Spine and Pain complaining of back and leg pain. Doc. 13-12 at 8-30. She underwent multiple treatments and noted some improvement to her pain after each procedure. *See id.* at 22, 24-25. As noted by the ALJ, other than the pain and other limitations from her back pain and spine diagnoses, Dr. Telang noted mostly normal findings at each appointment: she had non-antalgic gait, normal sensation, and normal motor findings. *Id.* Richards denied trouble with memory, neurological deficit, or excessive drowsiness. *Id.* at 12, 21, 26. Dr. Telang noted normal neurological findings. *Id.* at 8-30.

Richards sought treatment at a sleep clinic, and, at appointments, she reported no difficulty with concentration. Doc. 13-11 at 45, 47, 50-51. While she reported some fatigue, she noted no fatigue at her follow-up appointment, and she had improved markedly since her first visit. *Id.* at 45-46 ("Patient states that her quality of sleep has improved … [she] does report improvement in her daytime energy.").

At a consultative examination, CRNP James Van Hise noted no difficulty sitting, standing, or walking and stated that Richards did not need assistance cooking, housekeeping, shopping, or driving. Doc. 13-12 at 87-88. She appeared

"alert" and "oriented," and he noted normal strength, dexterity, and normal gait and station. *Id.* at 88-90. He recommended limitations in lifting and carrying. *Id.* at 92.

The record contains documentation of visits to Dr. Cost, Richards's primary care physician. He noted that Richards was "still having chronic fatigue" because "[s]he works the night shift and her CPAP machine has not worked for some time." *Id.* at 41. At an appointment in September 2022, he noted normal findings and reviewed and filled her medications. *Id.* at 99.

In arguing that the medical evidence "[o]verwhelmingly" supports her testimony, Richards cites the examination by Dr. Mark Dean, *see* Doc. 18 at 14-16, which was also evaluated by the ALJ, Doc. 13-4 at 24. Richards cites Dr. Dean's statement that the "claimant's primary complaints are centered around her inability to focus and her extreme fatigue after recovering from COVID 2 yrs ago," Doc. 18 at 15, but this is merely Dr. Dean's recitation of Richards's testimony to him, Doc. 13-12 at 112-13. In the same examination, he noted she denied fatigue, depression, and anxiety. *Id.* at 110. He noted a mildly antalgic gait and that Richards was able to get up and out of the chair without difficulty and get on and off the exam table without difficulty. *Id.* He noted normal motor and grip strength and normal findings on the mental screening. *Id.* at 111.

As to her physical status, he opined that her physical exam "does not show clear limitations for work," and as to her cognitive complaints, it is "difficult to

ascertain the prognosis," but "[o]verall prognosis for [Richards] is good." *Id.* at 112. Dr. Dean opined that she had no limitations on her ability to stand, sit, walk, bend or stoop, reach, handle, lift, carry, see, hear, speech, driving, or with memory or understanding. *Id.*

After reviewing and noting the medical records above, the ALJ determined that Richards's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the evidence as a whole. Doc. 13-4 at 24. As noted above, Richards had back issues treated with injections, sleep apnea causing fatigue but addressed by a CPAP machine, and other acute issues addressed by medication. Treating physicians and nurses noted mostly normal findings, and Richards typically reported no significant issues aside from her recurring back pain.

The ALJ had substantial support to find that Richards's allegations regarding her fatigue and ability to work were inconsistent with the evidence of the generally limited treatment she received, spine issues treated by procedures and medication, and mostly normal findings from healthcare providers. *See Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 859 (11th Cir. 2017). Richards could mow her lawn, Doc. 13-13 at 2, live by herself, take care of her dogs, and shop and prepare meals, Doc. 13-12 at 121. It is clear that the ALJ "considered [Richards's] medical condition as a whole" in articulating his credibility finding. *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *see McGill v. Comm'r of Soc.*

*Sec.*, 682 F. App'x 738, 741 (11th Cir. 2017) (affirming ALJ decision even where claimant testified as to pain and there was evidence in the record of ongoing pain because the ALJ supported his credibility finding with substantial evidence).

The ALJ "considered [Richards's] subjective complaints with the record as a whole and adequately explained his decision not to fully credit [Richards's] alleged limitations on [her] ability to work." *See Raper*, 89 F.4th at 1279. Richards disagrees with the ALJ's decision to discount her testimony, but the question is not whether the ALJ "could have reasonably credited his testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). Because the ALJ considered Richards's subjective statements in light of all the relevant evidence, articulated reasons for discounting her allegations, and grounded those reasons in substantial evidence, Richards has shown no error warranting remand.

**B. Residual Functional Capacity**

A claimant's RFC is the most he can do despite his limitations and is assessed based on "all the relevant evidence" in the case record, including medical evidence and opinions, as well as a claimant's statement of his symptoms. 20 C.F.R. § 404.1545(a)(1), (3). "[T]he task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors," *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010), and that determination is left to the ALJ's

discretion, so long as the holding is supported by substantial evidence, *see Carson v. Comm'r of Soc. Sec. Admin.*, 300 F. App'x 741, 743 (11th Cir. 2008). This Court's review of the ALJ's RFC determination is limited in scope, and the Court will not reweigh the evidence or substitute its own judgment. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

Here, after thoroughly evaluating the entire record as well as Richards's own statements, the ALJ found that Richards has the RFC to perform a range of light work, with certain limitations. The ALJ explained that Richards had objective evidence of a spine disorder, diabetes, and reported fatigue limiting her slightly, but based on consistently normal examination findings, she could still engage in light work but with limited bending and lifting. Doc. 13-4 at 24.

Richards's main challenge to the ALJ's RFC assessment is that "[d]espite finding [her] testimony partially credible and despite the overwhelming medical evidence documenting her fatigue and concentration problems, the ALJ's RFC contains absolutely no limitations addressing these issues." Doc. 18 at 19. Richards is wrong in two regards. First, as explained above, the Court has not identified "overwhelming" medical evidence of fatigue and Richards has not pointed to any. The evidence cited by Richards in her brief is the same as the evidence examined by the ALJ and the Court above; while the record shows reported fatigue, it also

contains multiple reports of no fatigue and no difficulty with concentration, *see* Doc. 13-11 at 45, 47, 50; Doc. 13-12 at 110.

Second, the ALJ properly found her subjective symptoms *not credible* and inconsistent with the record. *See supra* at 7-13; Doc. 13-4 at 23-24. Richards believes that the ALJ erred by failing to include limitations related to her fatigue. Doc. 18 at 20. But the ALJ was not required to include limitations based on symptoms he properly found to be not credible, and the RFC analysis is supported by substantial evidence. *Ortiz v. Comm'r of Soc. Sec.*, No. 6:15-cv-705, 2016 WL 3166849, at *6 (M.D. Fla. Apr. 25, 2016), *report and recommendation adopted*, 2016 WL 3144118 (M.D. Fla. June 6, 2016) ("Therefore, in light of the ALJ's credibility determination, which is supported by substantial evidence … the ALJ was not required to include the symptoms and limitations Claimant identified during the hearing in his RFC determination.").

Richards contends that because the ALJ said her symptoms "were not entirely consistent," he necessarily found her symptoms "at least partially credible," meaning "the ALJ must either incorporate limitations addressing those symptoms in the RFC or provide clear, specific reasons supported by substantial evidence for omitting them." Doc. 18 at 13-14. But after a review of the record, the ALJ found that Richards's alleged symptoms were "inconsistent." Doc. 13-4 at 24. His earlier statement of "not entirely consistent" does not mean he found the symptoms partially

credible—"[s]aying that a statement is 'not entirely consistent' with the evidence is just another way of saying that the statement is inconsistent with the evidence," *Anthony C. v. Comm'r, Soc. Sec. Admin.*, No. 1:21-cv-1610, 2022 WL 16709541, at *8 (N.D. Ga. Sept. 13, 2022), and the ALJ's decision clearly demonstrates he found that her symptoms inconsistent with the evidence.

Thus, there is no "fundamental disconnect" between the ALJ's credibility finding and the RFC. Doc. 18 at 19. The ALJ explicitly discounted Richards's statements as to the intensity, persistence, and limiting effects of her symptoms, and acknowledged that the record shows "some reported fatigue" in addition to a spine disorder and diabetes. Doc. 13-4 at 24. He then—in light of the record showing limited treatment and some improvement with treatment, mostly normal findings, and normal movement abilities—limited Richards to light work with certain restrictions because her impairments "reasonably limit her postural movements and require[] that she has environmental restrictions." *Id.*

Richards takes issue with the ultimate RFC because it does not have the limitations she believes it should. But she does not otherwise argue that the RFC analysis is not supported by substantial evidence, and her contention that certain limitations should be included does not negate the ALJ's evidentiary support. The ALJ was not required to include Richards's suggested limitations. He permissibly found that her statements as to her symptoms were inconsistent with the evidence,

and thus he permissibly declined to incorporate limitations based on those symptoms into the RFC. *See Walker v. Comm'r of Soc. Sec.*, No. 4:18-cv-955, 2019 WL 4750074, at *9 (N.D. Ala. Sept. 30, 2019), *aff'd sub nom. Walker v. Soc. Sec. Admin., Comm'r*, 987 F.3d 1333 (11th Cir. 2021) ("The ALJ was not required to include limitations based on [claimant's] subjective complaints when those complaints were not supported by the record.").

## II. Fatigue & Concentration as a Mental Impairment

Richards alternatively argues that even if the ALJ was correct in analyzing her fatigue and concentration issues as a mental impairment at step two, he erred by not including a more detailed assessment of that mental impairment when formulating the RFC. *See* Doc. 18 at 24-25; Doc. 24 (argument relied on by magistrate judge).

At step two, the ALJ noted that Richards denied any mental impairment but testified that since she had COVID, she has had difficulty with concentration and is easily distracted, so he evaluated her COVID symptoms (fatigue & concentration) as a "neurocognitive disorder." Doc. 13-4 at 20. An ALJ is required to use a "special technique" to evaluate mental impairments, which requires consideration of how that mental impairment impacts four functional areas. *See* 20 C.F.R. § 404.1520a. These functional areas are referred to as the Paragraph B criteria.

As to understanding, remembering, or applying information and concentrating, persisting or maintaining pace, the ALJ found that Richards had no

limitations based on her consistently normal mental findings. Doc. 13-4 at 21. In the area of interaction with others, he found she had no limitation based on her own testimony and other self-reported social function in the record. *Id.* As to adapting or managing oneself, the ALJ found that she had no limitation because she reported she could do household chores and care for her personal hygiene. *Id.*

Based on his assessment, the ALJ found that "the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere." *Id.* He found that Richards's COVID-related fatigue and concentration problems were a non-severe mental impairment because she had "no limitation" in any of the four functional areas. *Id.*

Richards does not challenge the ALJ's step two findings or his evaluation of the relevant record; she contends only that his RFC analysis is flawed because he did not consider her non-severe mental impairment in formulating limitations. *See generally* Doc. 18. At step two, the ALJ explained that the limitations discussed in the Paragraph B criteria "are not a residual functional capacity assessment … [and] [t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." Doc. 13-4 at 22. The "residual functional capacity assessment reflects the degree of limitation the

[ALJ] … found in the 'paragraph B' mental function analysis," which, as noted, was none. *Id.*

As an initial matter, the ALJ was not required to include any limitations related to Richards's non-severe mental impairment because she had "no limitation" in any of the four functional areas. *Id.* at 21. "[T]he persuasive precedent demonstrates that ALJs are not obligated to include mental limitations in the RFC when they find 'mild' limitations in the paragraph B criteria, nor are they required to expressly explain why mild paragraph B limitations are not included in the RFC." *Mockler v. Comm'r of Soc. Sec.*, No. 8:23-cv-1024, 2024 WL 4002990, at *7 (M.D. Fla. Aug. 30, 2024) (collecting cases). The ALJ was not required to consider Richards's non-severe mental impairment when he found no limitation in any of the four functional areas. *Cf. Mitchell v. Comm'r of Soc. Sec.*, No. 2:20-cv-236, 2021 WL 4305088, at *6 (M.D. Fla. Sept. 22, 2021) (remanding when the ALJ found "mild impairments in all four areas of mental functioning and yet no limits whatsoever in the mental functions associated with work"). As he explained, the "residual functional capacity assessment reflects the degree of limitation the [ALJ] [] found in the 'paragraph B' mental function analysis"—i.e., the RFC reflects no limitation because the ALJ found no limitation in any functional area. *See* Doc. 13-4 at 21-22.

Richards relies on *Pupo v. Commissioner, Social Security Administration*, 17 F.4th 1054, 1064 (11th Cir. 2021), to argue that "even when a claimant's mental impairments are considered non-severe, 'the ALJ [is] still required to consider them when assessing the claimant's RFC.'" Doc. 18 at 24. But mental *impairments*, severe or not, are only relevant at the RFC stage if they cause a relevant *limitation*. The Eleventh Circuit, therefore, has held that when an ALJ found mental impairments and "did not indicate that medical evidence suggested Winschel's ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical," then "the ALJ should have explicitly included the limitation in his hypothetical question to the vocational expert." *Winschel*, 631 F.3d at 1181. But, here, the ALJ permissibly found "no limitation" from Richards's non-severe mental impairments. Doc. 13-4 at 21. Thus, "[i]n contrast to the ALJ's step-two findings in *Winschel* … Plaintiff fails to connect the ALJ's mild-limitation paragraph B findings to a work-related limitation." *Guerrera v. Kijakazi*, No. 8:22-cv-740, 2023 WL 2446626, at *5 (M.D. Fla. Mar. 10, 2023). Thus, even if the RFC analysis did not consider Richards's mental impairment in setting out limitations on her ability to work, there was no error because that impairment caused no limitations.

Even so, the RFC analysis reflects consideration of Richards's non-severe mental impairment. *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268-70 (11th Cir. 2019). Richards consistently described her post-COVID symptoms as

fatigue and difficulty concentrating, Doc. 13-5 at 42, 48-49, which the ALJ acknowledged and evaluated as a "neurocognitive disorder," Doc. 13-4 at 20. In the mental impairment analysis, he mentions her "concentration," *id.* which is intertwined with an assessment of her post-COVID fatigue—per Richards's own description of her impairment, *see* Doc. 18 at 11-14 (Richards consistently referred to her "post-COVID fatigue and concentration problems"); *id.* at 23 ("This testimony explicitly links the concentration problems to COVID-19" which is also explicitly linked to her fatigue). And then in the RFC assessment, the ALJ addressed the mental impairment he identified at step two. He noted Richards's "reported fatigue," but found that Richards's statements as to the intensity, persistence, and limiting effects of her concentration and fatigue were not consistent with the entirety of the record. Doc. 13-4 at 24. This was in light of the medical evidence and Richards's own inconsistent testimony; she claimed she could no longer mow her lawn or work at all, but the record shows that she was able to "push mow her lawn once a week … without any significant symptoms," Doc. 13-13 at 2, live by herself, and take care of her pets, Doc. 13-4 at 24. Looking back to step two shows that the ALJ was analyzing her non-severe neurocognitive disorder in his RFC discussion. There, he found the mental impairment non-severe because she had "normal psychological findings" and "is able to drive, mow the lawn, care for dogs, and complete household chores." Doc. 13-4 at 21. Contrary to Richards's argument, the ALJ considered her

mental impairment in his RFC analysis—he addressed her fatigue and concentration symptoms and contrasted them with her ability to mow the lawn and care for her home. His consideration of her ability to mow and take care of her home at both step two and the RFC assessment links the two and demonstrates his analysis.

The ALJ opinion, consistent with Richards's testimony, viewed her COVID fatigue symptoms as encompassing "difficulty with concentration" that could be considered a "neurocognitive disorder." Doc. 13-4 at 20. And in the RFC, the ALJ considered symptoms of this fatigue and found that Richards's limitations were not as intense as she suggested. As explained above, that credibility analysis is supported by substantial evidence, *see supra* at 7-13, and the subsequent RFC is likewise supported by substantial evidence, *see supra* at 13-17. This Court's review is limited—it is "preclude[d] [] from reweigh[ing] the evidence or substitut[ing] [its] judgment for that [of the Commissioner] … even if the evidence preponderates against the decision." *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (internal quotation marks omitted). After reviewing the record and the parties' briefs, the Court finds the decision of the Commissioner should be affirmed.

## CONCLUSION

The ALJ determined Richards's RFC after evaluating the medical evidence. The Court's role is to ensure the ALJ applied the correct legal standards and reached a conclusion supported by substantial evidence. For the reasons discussed above, the Court finds that the ALJ correctly applied the relevant standards and the ALJ's decision is supported by substantial evidence. Thus, the Court **REJECTS** the Magistrate Judge's Report and Recommendation (Doc. 24) and **AFFIRMS** the Commissioner's decision.

**DONE** and **ORDERED** this 31st day of August, 2026.

Edmund LaCour

**EDMUND G. LACOUR JR.**
UNITED STATES DISTRICT JUDGE